GEORGE B. CONKLIN as Administrator, etc., of SIDNEY S. CONKLIN, Deceased, Appellant, v. ANGELINE CONKLIN, Respondent.

*Burden of proof — upon whom it rests — gift causa mortis from husband to wife — when the mere taking possession thereof by the wife does not establish the gift.*

This action was brought by the plaintiff to recover certain bonds, claimed to have been the property of his intestate at the time of his death, which were held by the defendant, and which she had refused to deliver upon the plaintiff's demand. The answer admitted the plaintiff's appointment as administrator and that the intestate owned the bonds in his life-time, but averred that prior to his decease they became the property of the defendant by a *donatio mortis causa*, and that she then took and thereafter continuously kept possession of them.
*Held*, that the defendant held the affirmative, and that the burden of establishing the alleged gift rested upon her.

The defendant, who was the widow of the intestate, testified that a few days before his death she took possession of the bonds, and kept continuous possession thereof until after his death, when she deposited them with a friend.

*Held*, that this evidence failed to show, as between a husband and his wife, a change of the title to the bonds, or in any legal sense a change of his possession thereof, and was insufficient to establish a gift from the husband to his wife.

APPEAL from a judgment in favor of the defendant, entered on the report of a referee.

*Erastus F. Brown*, for the appellant.

*George Norris* and *W. R. Beach*, for the respondent.

DAVIS, P. J. :

After the allegations in respect to the death of the plaintiff's intestate, Sidney S. Conklin, and the issuing of letters of administration, etc., to the plaintiff, the complaint alleges that the said Conklin was the owner in his life-time and at the time of his death, of certain bonds of the United States, of the value of $6,800 and upwards ; that the defendant claims that said bonds were given to her by said Conklin in his life-time, and under such claim has taken possession of the same, and that the plaintiff has duly demanded of the defendant the said bonds or their proceeds, but that the defendant refuses and neglects to deliver the same to him, wherefore he demands judgment. The answer admits the allegations in respect to the death of the intestate and the appointment of the plaintiff as administrator, and admits " that said Conklin was, in his life-time, the owner of certain bonds of the United States of the value of $6,800 or thereabouts, but she avers that prior to his decease said bonds became the property of the defendant as hereinafter set forth and were her property at the time of his said decease." The answer then admits the demand of the bonds by the plaintiff and her refusal to deliver them to him. It then, as a separate and distinct defence, alleges a *donatio causa mortis* of said bonds to her by the said intestate shortly before his death, and in anticipation thereof ; that she then " took possession thereof and kept the same continuously in her possession until and after the death of the said intestate, and that they have ever since remained in her possession and are now her prop-

erty, and have never formed any part of the estate whereof the said intestate died possessed."

Upon these pleadings the learned referee held that the plaintiff had the affirmative and was bound to establish, at least a *prima facie* title in his intestate to the bonds. We think in this he erred. The admission is distinctly made by the answer that the intestate, in his life-time, was the owner of the bonds, and no claim of title or possession is set up, except by virtue of the alleged *donatio causa mortis.* This state of the pleadings devolved upon the defendant the burden of establishing the alleged gift. Such gifts are not presumed. "*Nemo donare facile presumitur*" is a maxim of the law applicable to the case, and where a gift *causa mortis* is alleged, the presumption being against it, clear proof on the part of the claimant is required. It was said in *Grey* v. *Grey* (47 N. Y., 552–556), by PECKHAM, J., speaking of such a gift, "it must be established beyond suspicion. So are all the authorities touching that subject. (*Walter* v. *Hodge*, 2 Swans. Rep., 97; 2 Kent, 444 [8th ed.] ; *Coutant* v. *Schuyler*, 1 Paige, 316.)"

The plaintiff was entitled to stand upon the admission of the answer that the intestate was the owner of the bonds in his life-time. That gave him a *prima facie* case, because the defendant herself admitted such ownership, and only asserted a right by virtue of the alleged gift. We think it was her duty to have proved the gift, otherwise the plaintiff would be entitled to recover. But the plaintiff gave evidence, under the ruling of the referee, showing that at some time prior to his decease his intestate was in the possession of the bonds, exercising rights of ownership over them. It was then shown on the part of the defendant, by her own testimony, that the deceased, her husband, died on the 14th of August, 1873 ; that the bonds in question had been in her hands ; that they came into her hands on the fifth, sixth or seventh of August ; that she had had continuous possession of them ever since that time until she deposited them after the death of her husband with a friend ; that she first took the bonds, and put them in the pocket of her dress, which was hanging up in the room, where they remained until she gave them to her friend.

The substance of this testimony was, that a few days before the death of the intestate she had possession of bonds belonging to him, and kept such possession until after his death. The referee gave no effect to the fact that the defendant was the wife of the intestate. He does not seem to have considered that, on the proof given by her, her possession is in law presumed to be that of the husband. She was not competent to establish the alleged gift by her own testimony, because it was a transaction between herself and the deceased, and perhaps was obliged to rest her case upon the mere naked statement that she took possession of the bonds a few days before his death and had kept such possession. This evidence failed to show a transfer of title. If it would have done so as between strangers, certainly as between the husband and wife it failed to show change of title, or in any legal sense a change of possession. It would be an extremely dangerous rule to hold that the mere manual possession of a deceased husband's property by his widow, at his residence where he died, is *prima facie* evidence of change of title to her. Such a rule would embarrass the representatives of an estate beyond measure, and would prove of serious detriment to its creditors.

In the case just referred to the learned judge says : " It is clear that if I own a chattel, not a chose in action, to-day, and next week it is found in another's possession, the law does not presume a legal transfer of the title to the possessor. But as against me, if title be claimed, he must prove it. Why should any different rule prevail as to a promissory note ? " And again he says : " But if any presumption of title or of payment prevail by mere possession, it is only where the possession is free from suspicion. It is not a defence to show that defendant, a member of the family of the deceased, and hence having access to his papers, is found in possession of a note owned by deceased at or about the time of his decease. \* \* \* To establish such a rule would be dangerous. It leads into too great temptation."

We concur in the good sense of these observations ; for we think nothing would be more injurious to the administration of the law than to permit the mere fact of possession of property shown to have belonged to a deceased person a few days before

his death, by relatives or persons residing in the same family and having access thereto, to be satisfactory or even *prima facie* evidence of title.

In the case of *Bedell* v. *Carll* (33 N. Y., 581), the note of a third party had been indorsed over by the deceased prior to his death and delivered by him to his daughter, and it was held that these facts established a *prima facie* title in her. There is nothing in that case to conflict with the views above expressed.

We are of opinion that the case was not properly disposed of by the learned referee, and that the judgment must be reversed and a new trial ordered, with costs to abide the event.

Present — DAVIS, P. J., BRADY and BARRETT, JJ.

Judgment reversed and new trial ordered, costs to abide event.